# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JILL AYRES, an individual;<br><br>            Plaintiff,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF HEALTH & HUMAN SERVICES, A Nebraska Political Subdivision; JOAN WELDON, in her official and individual capacities; BRENDA CHASE, in her official and individual capacities; TALANA SAYRE, in her official and individual capacities; DIANE MARTIG, in her official and individual capacities;  PROJECT HARMONY, a Nebraska Non Profit; and SARAH BROCK, in her official and individual capacities; and LANA SAYERS, in her official and individual capacities;<br><br>            Defendants. | 4:17CV3116<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion to Dismiss, ECF No. 29, filed by Defendants Nebraska Department of Health & Human Services (NDHHS), Joan Weldon, Talana Sayre, Brenda Chase, and Diane Martig (collectively, State Defendants); the Motion to Dismiss, ECF No. 31, filed by Defendant Project Harmony; and the Findings and Recommendation, ECF No. 33, of Magistrate Judge Michael D. Nelson.  For the reasons stated below, Project Harmony's motion to dismiss will be granted; the State Defendants' motion to dismiss will be granted in part; and the Findings and Recommendation will adopted in their entirety.

# BACKGROUND

The following facts are those alleged in the Amended Complaint, ECF No. 25, and assumed true for purposes of the Motion to Dismiss.[1]

Ayres is a the biological mother of an adult daughter, and the adoptive mother of a 19-year-old daughter, identified in the Complaint as "AA," and a six-year-old daughter, identified as "EA." *Id.* ¶ 16, Page ID 328. Both adoptive daughters were minors during the time relevant to the conduct alleged in the Complaint. AA was removed at a young age from her biological parents' home and has been diagnosed with "Post Traumatic Shock Disability," "Reactive Attachment Disorder," "Attention Deficit Hyperactivity Disorder," and Schizophrenia. *Id.* ¶ 17.

During the spring of 2015, "medical provider issues" caused AA to go without her medication for "several days." *Id.* ¶ 18. Page ID 328–29. During this lapse in her medication, Ayres and several other people reported that AA's behavior and focus improved. *Id.* The Complaint does not state if or when Ayres resumed AA's medication.

In late August of 2015, Ayres found AA making homicidal threats outside the bedroom of EA and a two-year-old foster child, named in the Amended Complaint as "AF." *Id.* ¶ 19, Page ID 329. Concerned for the children's safety, Ayres contacted the "Adult & Child Abuse & Neglect Hotline established by the Division of Children & Family Services." *Id.* ¶ 21. On this call, Ayres asked Hotline staff if Child Protective Services (CPS) would intervene if she brought AA to a treatment facility and then did not pick her

---

[1] The Court notes that, as a preamble in the Amended Complaint, Ayres quoted a website discussing the tendency of Nebraska to remove children from parental homes relative to other states. *See* ECF No. 25, Page ID 5 & n.1. The Court has neither considered this information, nor visited the cited website, in deciding the motions to dismiss.

up.  *Id.* ¶ 22, Page ID 330.  The staff informed Ayres that CPS would charge her with neglect and abandonment if she failed to pick up AA under the circumstances she described.  The staff also informed Ayres that CPS would remove her other children if she brought AA home and that "her report had been 'accepted' as an intake for investigation on a dependency case."  *Id.* ¶ 23.  On the advice of the Hotline's staff, Ayres took AA to Immanuel Hospital, where she was admitted and placed on antipsychotic medications. *Id.* ¶ 24.  Soon after taking the medication, AA "lost touch with her surroundings and did not know where she was."  *Id.*

Immanuel attempted to place her at Bryan Hospital in Lincoln, Nebraska, but "[t]he Mental Health Board denied her admission."  *Id.* ¶ 25, Page ID 331.  After nine days of hospitalization, "Immanuel told Ms. Ayres she needed to pick up AA."  *Id.*

Ayres was unable to find placement for AA in Nebraska, having been told that AA was "too ill" for juvenile facilities and too young for adult facilities.  *Id.* ¶ 27.  After leaving Immanuel, AA went to stay with Ayres's adult daughter in Kansas.  *Id.* ¶ 28, Page ID 331–32.  Two weeks later, Ayres contacted police in Kansas due to AA's deteriorating mental condition.  *Id.* ¶ 29, Page ID 332.  The police took AA into custody and placed her at COMCARE Kansas, a hospital facility for youth with serious emotional disturbances.  *Id.*  COMCARE transferred AA to the Osawatomie State Hospital, in Osawatomie, Kansas, the next day.  *Id.*

NDHHS assigned Defendant Sarah Brock, a Child and Family Services Specialist, to investigate the safety of Ayres's children on September 28, 2015.  *Id.* ¶ 34, Page ID 333–34.  Brock interviewed Ayres's six-year-old daughter, EA, at her school for approximately ten minutes.  *Id.*  Brock undertook no other investigatory measures.  *Id.*,

3

Page ID 334. Based on this investigation, Brock concluded that "Ms. Ayres' home was unsuitable for foster children." *Id.* ¶ 35.

Defendant Talana Sayre, also a Child and Family Services Specialist with NDHHS, was assigned to investigate possible physical abuse of AF, Ayres's two-year-old foster child. Sayre's conclusions cite only Brock's report of her interview with AE; they do not mention a site visit CPS staff made to AF's daycare. *Id.* ¶ 36. The Amended Complaint quotes the director of AF's daycare, who describes the visit by CPS staff as lasting only five minutes, and who claims the CPS staff "basically rolled their eyes" when the director informed them that AF always came to the daycare neatly dressed and free of bruises. *Id.* ¶ 37, Page ID 334–35. The Amended Complaint also states that "Sayre did not talk to or examine either AF or her infant brother." *Id.* ¶ 40.

The Amended Complaint alleges that Sayre, Brock, and NDHHS "failed to contact, interview or otherwise investigate obvious and available collateral sources concerning AA and AF," such as "treating physicians, teachers, and day care personnel . . . ." *Id.* ¶ 43, Page ID 336. The Amended Complaint describes how these collateral sources would have supported Ayres's fitness as a parent. *See id.*, Page ID 336–38.

On October 8, 2015, Brock informed Ayres that she would be placed on the "Child Abuse Registry," due to Ayres's neglect of AA in allowing her to "go 'off her meds.'" *Id.* ¶ 45, Page ID 338. On January 11, 2016, "the Agency[2] concluded that its investigation substantiated the placement of [Ayres] on the [Child Abuse Registry]." *Id.* ¶ 47, Page ID 338–39.

---

[2] The Court assumes that "the Agency" refers to NDHHS.

As a result of her placement on the Child Abuse Registry, Ayres was prohibited from fostering children and her children[3] were removed from her home. She also lost her job and the opportunity for future employment in child and family services—her trained field. *Id.* ¶¶ 48–50, Page ID 339. At some point, the state of Nebraska removed Ayres's name from the Registry. *Id.* ¶ 51.

The Amended Complaint gives the following summary:

> [N]one of [the] Nebraska state agencies or their employees completed a thorough and legitimate investigation pursuant to NDHHS guidelines before deciding to place [Ayres] on the Registry. State employees Sarah Brock, Talana Sayre, Diane Martig, Lana Sayres, and Brenda Chase conducted and approved an inadequate, perfunctory, and non-existent "investigation" despite the existence of NDHHS published guidance and requirements. They failed to consider Ms. Ayres' constitutional rights and their actions resulted in Ms. Ayres being placed on the Central Registry, the loss of Ms. Ayres' license to provide foster care, loss of her foster and adopted children, and loss of her job.
>
> The State of Nebraska and its employees failed to conduct an adequate, let alone thorough, investigation. The investigation failed to meet guidelines in place by DHHS for intake processes and investigation. Most significantly, the State of Nebraska and its employees should have and were expected to contact and interview collateral sources who could provide meaningful and objective information. No such contact was made and Jill Ayres' life was devastated by being placed on the Central Registry. The actions directly flowing from the State of Nebraska's faulty investigation as conducted by DHHS employees were: (1) loss of Ms. Ayres' children; (2) loss of her job; (3) loss of her profession and livelihood; and (4) loss of her self-esteem and self-worth.

*Id.* ¶¶ 53–54, Page ID 340.

Ayres filed this action in the District Court of Douglas County, Nebraska, on August 3, 2017. Defendants removed the case to this Court on September 1, 2017, citing the Court's federal-question jurisdiction. Ayres filed her Amended Complaint on January 18, 2018. In the Amended Complaint, the first claim is captioned "FIRST

---

[3] The issue of whether Ayres alleged that all her children or just the foster children were removed is addressed below.

CLAIM ALL DEFENDANTS VIOLATED JILL AYRES' WELL-ESTABLISHED CONSTITUTIONAL RIGHTS." *Id.*, Page ID 341. The Amended Complaint goes on to state that "the State of Nebraska, and its employees, acting in their official capacities, interfered with and deprived Jill Ayres' Fourteenth Amendment liberty interest in the companionship, care, and custody of her daughters." *Id.*

Subsequent headings are not captioned numerically, and whether they are intended as part of the "First Claim" or new claims is difficult to discern. The next heading states "Defendants Violated Jill's Constitutionally Guaranteed Rights to Substantive Due Process Because the 'Investigation' Was Not Based on A Reasonable Suspicion of Child Abuse." *Id.*, Page ID 342. Under this heading are four subsections, respectively captioned, "Defendants Violated Jill's Constitutionally Guaranteed Liberty Interests Because Its [sic] Investigation Was Inadequate, Incomplete, and Incompetent;" "Defendants Violated Ms. Ayres' Constitutional Rights and Liberty Interests Based on Their Failure to Interview & Corroborate Witness Testimony;" "Defendants Violated Ms. Ayres' Constitutional Rights Prior to Placing Her on the Central Registry Based on the CPS 'Staggering' Rates of Error;" and "Defendants Violated Jill's Constitutional Rights by Placing Her on The Central Registry When She Exercised Her Constitutional Right to Determine AA's Medical Treatment." *Id.,* Page ID 343–45. The final two section headings simply state "NDHHS Employees Are Liable Under 42 U.S.C. §1983 In Their Official Capacities" and "Individual Defendants Are Liable in their Personal Capacities." *Id.*, Page ID 346–47.

Ayres prays that Defendants "be enjoined from violating her Constitutional rights" and that she be awarded damages for (1) pain and suffering; (2) medical expenses

6

caused by emotional stress; (3) loss of employment; (4) loss of reputation, (5) loss of her "license to carry on her profession;" and (6) attorney fees. *Id.*, Page ID 347–48.

## STANDARDS OF REVIEW

**I. Fed. R. Civ. P. 12(b)(1)—Lack of Subject-Matter Jurisdiction**

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (*Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial challenge to jurisdiction, the court presumes all of the factual allegations concerning jurisdiction to be true and will grant the motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young America Corp. v. Affiliated Comput. Servs.,* 424 F.3d 840, 843–44 (8th Cir. 2005) (citing *Titus*, 4 F.3d at 593). In a factual challenge to jurisdiction, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730. "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (citing *Osborn*, 918 F.2d 724, 730). "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Osborn*, 918 F.2d 724.

"As no statute or rule prescribes a format for evidentiary hearings on jurisdiction, 'any rational mode of inquiry will do.'" *Brown*, 2010 WL 489531, at *2 (citing *Osborn*,

918 F.2d 724, 730). "So long as the court has afforded the parties notice and a fair opportunity to be heard, an evidentiary hearing is unnecessary." *Brown*, 2010 WL 489531, at *2 (citing *Johnson v. United States*, 534 F.3d 958, 964–65 (8th Cir. 2008)).

**II. Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*,

799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

**I. Findings and Recommendation, ECF No. 33**

The record before the Court reflects that Ayres did not serve Defendant Sarah Brock, who has not voluntarily appeared. Judge Nelson issued an order requiring Ayres to show cause why Sarah Brock should not be dismissed. The show-cause order warned Ayres that failure to respond could result in dismissal of Brock. Ayres did not respond to the order, and Judge Nelson issued a recommendation that Brock be dismissed for failure of service. The Court will adopt the Findings and Recommendation, ECF No. 33, and dismiss Sarah Brock, without prejudice.

**II. Motion to Dismiss Project Harmony, ECF No. 31**

Project Harmony argues that it should be dismissed because Ayres does not allege that Project Harmony violated her constitutional rights. The Court agrees. The

9

Amended Complaint alleges that all the individual Defendants were employees of NDHHS, not Project Harmony. While the Amended Complaint alleges that Project Harmony assisted in developing the investigatory guidelines and had an extensive contractual relationship with the State of Nebraska, these allegations do not involve any action taken by Project Harmony against Ayres.

The Amended Complaint also contains the conclusory allegations that "[NDHHS] and Project Harmony placed Ms. Ayres on Nebraska's Child Abuse and Neglect Central Registry" and that "NDHHS, through CPS and Project Harmony, failed to conduct a legitimate investigation . . . ." ECF No. 25 ¶ 32, Page ID 333. However, the Amended Complaint only alleges that NDHHS employees conducted the investigation, and does not describe any role played by Project Harmony in placing Ayres on the Child Abuse Registry.

The only specific actions by Project Harmony alleged in the Amended Complaint are that the individual Defendants had their offices at Project Harmony and that NDHHS's Abuse and Neglect Hotline was located at Project Harmony. It cannot reasonably be inferred that allowing the use of space for offices constitutes actionable constitutional deprivation on the part of Project Harmony.[4]

Ayres had the burden to plead "enough facts to state a claim to relief that [was] plausible on its face." *Twombly*, 550 U.S. 544, 570. She has not done so, and the motion to dismiss Project Harmony will be granted.

---

[4] Ayres's brief opposing dismissal of Project Harmony, ECF No. 35, focused solely on whether Ayres pleaded sufficient facts to allege that Project Harmony was a state actor due to its relationship with NDHHS. The Court does not reach this question, but rather concludes that Ayres's allegations regarding Project Harmony are so threadbare as to fail to state a claim upon which relief can be granted.

**III. Motion to Dismiss Defendants NDHHS, Weldon, Sayre, Chase, and Martig, ECF No. 29**

**A. Claims for money damages against NDHHS and Defendants Weldon, Chase, Martig, and Sayre in their official capacities**

The State Defendants move for dismissal of NDHHS and the individual State Defendants, in their official capacities, on grounds of sovereign immunity. Ayres argues that Nebraska has waived sovereign immunity through the Nebraska Tort Claim Act, Neb. Rev. Stat. §§ 81-8,209 *et seq.*, and the Political Subdivision Tort Claims Act, Neb. Rev. Stat. § 13-902. Yet Ayres's Amended Complaint seeks relief under § 1983, and "[e]ven if the state waived its Eleventh Amendment immunity, the defendants cannot be sued for money damages under § 1983 because claims against state officials in their official capacities are really suits against the state and a state is not a person for purposes of a claim for money damages under § 1983." *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (citing *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66, 71 (1989)). Therefore, all claims against NDHHS will be dismissed, and all claims for money damages against Defendants Weldon, Chase, Martig, and Sayre, in their official capacities, will be dismissed.

**B. Claims for injunctive relief against Defendants Weldon, Chase, Martig, and Sayre in their official capacities**

"A suit for injunctive or declaratory relief avoids [Eleventh Amendment] immunity if the official has some connection to the enforcement of the challenged laws." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) (citing *Ex parte Young*, 209 U.S. 123, 157

(1908)). The State Defendants argue that Ayres failed to plead entitlement to prospective relief. As with Article III standing generally, entitlement to injunctive relief requires a plaintiff to plead a "threat of injury [that is] both real and immediate not conjectural and hypothetical." *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). In other words, entitlement to an injunction requires some "showing of a real or immediate threat that the plaintiff will be wronged again . . . ." *Lyons*, 461 U.S. at 111.

The Amended Complaint alleges that Ayres suffered a violation of her constitutional rights due to her placement on the Child Abuse Registry. The placement allegedly resulted from an inadequate investigation of Ayres stemming from her reporting of AA's erratic behavior. The Amended Complaint also alleges that AA has now reached the age of majority and that Ayres's name has been removed from the Registry. The only reference in the Amended Complaint to any type of prospective relief is the prayer's request that Defendants be "enjoined from violating [Ayres's] Constitutional rights." ECF No. 25, Page ID 347. Nowhere does the Amended Complaint describe the requested relief with any specificity or explain how Ayres faces a concrete risk of future constitutional deprivations.

It is noted, however, that the Amended Complaint alludes to the removal of Ayres's children, both adoptive and foster, and does not state their current status. *See id.* ¶ 1, Page ID 325 ("NDHHS made traumatic and life-changing decisions resulting in Ms. Ayres' loss of employment, loss of her children, loss of her license to act as a foster care parent; *id.* ¶ 35, Page ID 334 ("CFSS Brock concluded, based on a single, 10-minute interview of a six-year-old child, that Ms. Ayres' home was unsuitable for foster

children."); *id.* ¶ 49, Page ID 339 ("The NDHHS' action also directly resulted in Ms. Ayres losing her foster children."); *id.* ¶ 53, Page ID 340 ("[Defendants] failed to consider Ms. Ayres' constitutional rights and their actions resulted in . . . the loss of Ms. Ayres' license to provide foster care, loss of her foster and adopted children, and loss of her job."); *id.* ¶ 54 ("The actions directly flowing from the State of Nebraska's faulty investigation as conducted by DHHS employees were: (1) loss of Ms. Ayres' children . . . .").

Because ¶¶ 53 & 54 imply that NDHHS removed Ayres's adoptive child from her home, and it is unclear whether Ayres has regained custody of her, the Court will assume for purposes of the motion to dismiss that the adoptive child remains in state custody. Ayres's claims for injunctive relief against the individual State Defendants in their official capacities will not be dismissed at this time. The Court may address the propriety of dismissal of claims for injunctive relief against the individual State Defendants, in their official capacities, at a later time when discovery reveals whether Ayres is suffering a continued deprivation of custody of her child and whether the individual State Defendants "possess authority to enforce the complained-of provision." *Calzone*, 866 F.3d at 869 (quoting *Dig. Recognition Network v. Hutchinson*, 803 F.3d 952, 957–58 (8th Cir. 2015)).

**C. Claims against Defendants Weldon, Chase, Martig, and Sayre in their individual capacities**

The State Defendants also seek dismissal of Defendants Weldon, Chase, Martig, and Sayre in their individual capacities because the Amended Complaint fails to plead sufficient allegations as to their personal conduct and Ayres's constitutional deprivation.

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). Thus, when a plaintiff alleges liability on the part of a supervisor under § 1983, mere *respondeat superior* liability is insufficient. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (citing *Kulow v. Nix*, 28 F.3d 855, 858 (8th Cir. 1994)); *Hahn v. McLey*, 737 F.2d 771, 773 (8th Cir. 1984) (citing *Careaga v. James*, 616 F.2d 1062, 1063 (8th Cir. 1980)) ("[T]he theory of *respondeat superior* cannot be used under § 1983 to shift the responsibility for the plaintiff's injuries to the supervisors of the actual wrongdoers."). Thus, a plaintiff "must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [her] constitutional rights." *Mayorga*, 442 F.3d at 1132 (citing *Thomason v. SCAN Volunteer Serv., Inc.*, 85 F.3d 1365, 1370 (8th Cir. 1996); *Wilson v. Cross*, 845 F.2d 163, 165 (8th Cir. 1988); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)).

The Amended Complaint contains a conclusory allegation incorporating several Defendants, simply stating: "State employees Sarah Brock, Talana Sayre, Diane Martig, Lana Sayers, and Brenda Chase conducted and approved an inadequate, perfunctory, and non-existent 'investigation' despite the existence of NDHHS published guidance and requirements." Amended Compl. ¶ 53, ECF No. 35, Page ID 340.

Regarding Joan Weldon, the Amended Complaint merely alleges that "[a]t all relevant times, Joan Weldon was employed by [NDHHS] and worked with Project Harmony as an intake Specialist for the Child and Family Services Hotline," *id.* ¶ 5, Page ID 326, and that Weldon "received Ms. Ayres' telephone call that resulted in

Intake No. 00605837," *id.* ¶ 34. Nowhere else does the Amended Complaint mention Weldon. There is no allegation of personal conduct on the part of Weldon that could result in liability under § 1983.

Regarding Brenda Chase, the Amended Complaint alleges that she was employed by NDHHS, *id.* ¶ 8, Page ID 326, that she accused Ayres of "refusing to sign papers at Immanuel," *id.* ¶ 30, Page ID 332, and that she "refused to tell Ms. Ayres or her attorney what information they learned in their investigation," *id.* ¶46, Page ID 338. Ayres does not allege that Chase's accusation or her refusal to provide certain information amounted to deprivations of Ayres's constitutional rights. As to Diane Martig, the only mention of her in the Amended Complaint, aside from the conclusory allegation in ¶ 53, is the allegation that "Diane Martig was employed by NDHHS as a Child and Family Services Supervisor." *Id.* ¶ 9, Page ID 327. Nowhere does the Amended Complaint allege specific facts of personal involvement or direct responsibility by Chase or Martig that resulted in Ayres being placed on the Central Registry. Because Ayres did not allege sufficient personal involvement or direct responsibility on the part of Weldon, Chase, or Martig, they will be dismissed from the action in their individual capacities.

As to Talana Sayre, the Amended Complaint alleges that she was an employee of NDHSS, *id.* ¶ 6, Page ID 326, and that she was assigned Intake No. 607095, to investigate abuse of Ayers's foster child AF. The Amended Complaint further states that Sayre's "intake paperwork . . . only relies on [Sarah] Brock's report . . . for the conclusion that Ms. Ayres' home was unsuitable for foster child AF, due to physical abuse" *id.* ¶ 36, Page ID 334, and that Sayre "intentionally omitted any reference to" a

15

visit by CPS staff to AF's daycare, *id.* Lastly, the Amended Complaint alleges that Sayre "did not talk to or examine either AF or her infant brother," *id.* ¶ 40, Page ID 335, and that "the only evidence reviewed by CFSS Sayre was one short interview of six (6) year old EA," *id.*

Unlike the allegations against individual Defendants discussed above, Ayres has alleged sufficient personal conduct on the part of Sayre that the Court must consider whether Sayre is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 804 (8th Cir. 2010) (internal quotation marks omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[W]hen a state official takes an action that would otherwise disrupt familial integrity he or she is entitled to qualified immunity if the action is properly founded upon a reasonable suspicion of child abuse." *K.D. v. Cty. of Crow Wing*, 434 F.3d 1051, 1056 (8th Cir. 2006) (citing *Abdouch v. Burger*, 426 F.3d 982, 987 (8th Cir. 2005); *Whisman Through Whisman v. Rinehart*, 119 F.3d 1303, 1310 (8th Cir. 1997); Thomason, 85 F.3d at 1371); *Manzano v. S. Dakota Dep't of Soc. Servs.*, 60 F.3d 505, 511 (8th Cir. 1995)); *see also Abdouch*, 426 F.3d at 987 ("Even where this balancing reveals a constitutional violation, qualified immunity still applies unless the constitutional violation was so clear that an objectively reasonable official under the circumstances would have recognized the disproportionality or lack of reasonable suspicion."); *Thomason*, 85 F.3d at 1371–72) (describing the relevant issue as "whether the actions taken by defendants and the resulting disruption to plaintiffs' familial

16

relations . . . were so disproportionate under the circumstances as to rise to the level of a constitutional deprivation").

The Court finds that the issue of Sayre's qualified immunity would more appropriately be decided on a motion for summary judgment. *See Whisman*, 119 F.3d at 1309 ("Qualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation."). The Amended Complaint alleges that Sayre failed to follow written protocol, intentionally omitted relevant information from her report, and based her decision solely on second-hand information from the interview by Brock. Because the Court has no knowledge of the content of Brock's interview, the extent of Sayre's investigation, or the circumstances surrounding the initiation of the investigation, the Court will not dismiss the claims against Sayre at this juncture.

## IV. Defendant Lana Sayers

In her Amended Complaint, Ayres named an additional Defendant, Lana Sayers. Although the original Complaint, ECF No. 1-1, twice mentioned Sayers in its conclusory allegations regarding the investigation, it did not name her as a defendant. The Amended Complaint states that Ayres spoke with Sayers on the telephone at some point concerning the investigation, ECF No. 25 ¶ 46, Page ID 339, and that Sayers and other Defendants "conducted and approved an inadequate . . . 'investigation,'" *id.* ¶ 53. There is no allegation concerning whether Sayers was employed with NDHHS.

Ayres filed the Amended Complaint on January 28, 2018. More than 90 days have elapsed since the filing, and there is no indication in the record that Sayers has

been served or voluntarily appeared. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). Thus, the Court will order Ayres to show cause why the action should not be dismissed as to Lana Sayers.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss, ECF No. 29, filed by the State Defendants will be granted, in part; the Motion to Dismiss, ECF No. 31, filed by Project Harmony will be granted; the Findings and Recommendation, ECF No. 33, will be adopted in their entirety; and Ayres will be ordered to show cause why Lana Sayers should not be dismissed from this action. Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss, ECF No. 29, filed by Defendants Nebraska Department of Health & Human Services, Joan Weldon, Talana Sayre, Brenda Chase, and Diane Martig, is granted, in part, as follows;

    a. All claims against Defendant Nebraska Department of Health & Human Services are dismissed, with prejudice, and the Clerk is directed to remove the name of this Defendant from the caption;

    b. All claims against Defendants Joan Weldon, Brenda Chase, Diane Martig, and Talana Sayre in their official capacities seeking money damages are dismissed, with prejudice;

    c. All claims against Defendants Joan Weldon, Brenda Chase, and Diane Martig, in their individual capacities, are dismissed, without prejudice, and the Clerk will amend the caption accordingly;

    d. The motion is otherwise denied;

2. The Motion to Dismiss, ECF No. 31, filed by Defendant Project Harmony, is granted; all claims against Defendant Project Harmony are dismissed, without prejudice; and the Clerk will remove this Defendant's name from the caption;

3. The Findings and Recommendation, ECF No. 33, of Magistrate Judge Michael D. Nelson, are adopted in their entirety; all claims against Defendant Sarah Brock are dismissed, without prejudice, and the Clerk will remove the name of this Defendant from the caption;

4. Plaintiff Jill Ayres shall show cause by June 4, 2018, why Defendant Lana Sayers should not be dismissed from this action pursuant to Federal Rule of Civil Procedure 4(m); and failure to comply with this order may result in dismissal of all claims against Lana Sayers without further notice;

5. Defendants Joan Weldon, Brenda Chase, and Diane Martig, in their official capacities, and Talana Sayre in her official and individual capacities, will respond to the remaining claims in the Amended Complaint by June 4, 2018.


Dated this 14th day of May, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge